UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| WESLEY M. JARMON, Jr., )<br>2212 Bermondsey Drive )<br>Mitchellville, MD 20721 )<br>　　　　Plaintiff, )<br>　　　　　　　　　　　　)<br>v. )<br>　　　　　　　　　　　　)<br>KEVIN J. MARTIN, Chairman, )<br>Federal Communications Commission, )<br>445 12th Street, SW )<br>Room 8-B201 )<br>Washington, DC 20554 )<br>　　　　Defendant. )<br>　　　　　　　　　　　　) | CIVIL ACTION<br>Jury Trial Demanded<br>06cv1852 (EGS) |

## AMENDED COMPLAINT

Plaintiff, Wesley M. Jarmon, Jr., by and through undersigned counsel and files this Complaint against Defendant, Kevin J. Martin, Chairman of the Federal Communications Commission ("Agency" or "FCC") for employment discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII) as amended, 42 U.S.C. Sections 2000e et seq. with respect to compensation, promotion and retaliation. In support of his claims, Plaintiff alleges the following:

## JURISDICTION AND VENUE

1. This court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331.

2. Plaintiff works in the District of Columbia at the FCC. Venue is proper as the alleged events occurred in the District of Columbia.

3. The FCC is located in the District of Columbia ("D.C.") and regularly transacts and conducts business in D.C.

1

## PARTIES

4.    Plaintiff, Wesley M. Jarmon, Jr. ("Jarmon"), is an African-American citizen of the United States and resident of the State of Maryland.  He is currently employed as an Auditor with the FCC and has been for eighteen (18) years.

5.    Defendant, Kevin J. Martin ("Martin"), is Chairman of the FCC.

## FACTS COMMON TO ALL COUNTS

6.    Jarmon has been employed as an Auditor with the FCC for eighteen (18) years and is presently a GS-14 employee.

7.    In April 2004, per announcement #04-153-TJ, two (2) GS-15 positions became available in the FCC's Audits Branch and Plaintiff applied for them.

8.    At that time, Plaintiff's first level supervisor was Hugh Boyle ("Boyle"), Chief of the Audits Branch; his second level supervisor was William Davenport ("Davenport"), Chief of the Investigation And Hearing Division.

9.    Although Jarmon was ranked among the five (5) best-qualified applicants for this position, he was not selected.

10.   Two (2) Caucasian employees were selected for the positions and an additional position was created for a Caucasian female employee.

11.   Jarmon met or exceeded the job qualifications required for the GS-15 position(s) and his performance was superior to the Caucasian employees selected for the above-referenced position(s).

12.    Among other things, Plaintiff supervised two Universal Service Fund (USF) audits in the three years prior to submitting his application for the promotion.  His Audit Reports were the only two submitted that resulted in fines, forfeitures or noncompliances with FCC rules and

regulations that govern Universal Service Funds (USF) reporting. Neither Plaintiff's performance evaluations, nor his supervisors indicated to Plaintiff that he was deficient in any skills, including writing or oral communication. Plaintiff had significant supervisory skills and played major leadership roles in conducting audits and solving Agency and external financial management issues. He drafted audit reports, upon which legal staff referred, to determine compliance issues.

13. Plaintiff was the only applicant for the GS-15 position who attended the Federal Executive Institute ("FEI") in Charlottesville, Virginia and completed supervisory and leadership training created for a new class of Chief Financial Officers.

14. Jarmon's FEI training led to a detail assignment at the Environmental Protection Agency's ("EPA") CFO's office in 2000 and 2001. While at the EPA, Jarmon supervised a team of thirty (30) accountants and staff and helped the EPA obtain an unprecedented unqualified clean opinion on its financial statements. In 2001 and 2002, Plaintiff worked at the FCC in a detail assignment position as a Senior Accountant for the Chief Financial Officer.

15. On January 14, 2005, Plaintiff filed a formal complaint with the EEOC contending that Hugh Boyle and William Davenport discriminated against him by failing to promote him to the GS-15 position in the Audits Branch.

16. On July 14, 2006, Administrative Law Judge (ALJ) Gladys Collazo entered a judgment in favor of the FCC finding that the Agency did not discriminate against Plaintiff in its promotion decisions.

17. On August 4, 2006, the FCC issued a Final Order to implement the ALJ's decision, which determined that Plaintiff did not establish that he was discriminated against on the basis of race, nor did Plaintiff suffer retaliation.

18.     Plaintiff had filed similar grievances in January 27, 2000 and October 23, 2003 regarding the systemic discrimination that he encountered during his 18-year tenure at the FCC.

19.     Upon information and belief, Plaintiff's supervisors were aware of either one or both of Plaintiff's prior complaints.

## COUNT I
### Racial Discrimination in Promotion Practices

20.     Plaintiff herein adopts and incorporates by reference the allegations set forth in paragraphs 1 through 19 as if originally plead herein.

21.     Plaintiff is an African-American male and a member of a protected class.

22.     At all relevant times, Plaintiff was qualified for the GS-15 promotion and identified as among the five (5) best job applicants.

23.     The FCC further discriminated against Plaintiff based upon his race when it created an unadvertised position, which Defendant filled with a Caucasian employee.

24.     In the process of filling these three (3) positions, Defendant used subjective, arbitrary and racially discriminatory selection criteria.

WHEREFORE, Plaintiff respectfully prays that this Court:

(a)     Awards Plaintiff the promotion to a GS-15, including back pay;

(b)     Awards Plaintiff compensatory damages for not less than $350,000 for emotional distress, mental anguish, inconvenience, and impairment of quality of life;

(c)     Awards reasonable attorney's fees and costs for this action and related administrative proceedings; and

(d)     Awards other and further relief, including such declaratory and equitable relief as this Court deems just and proper.

## COUNT II
### Disparate Treatment in Compensation

25. Plaintiff herein adopts and incorporates by reference the allegations set forth in paragraphs 1 through 24 as if originally plead herein.

26. Plaintiff's supervisors attempted to direct Plaintiff to perform audits in a manner inconsistent with accepted auditing practices. Plaintiff's counterparts were not encouraged to perform work contrary to proper standards.

27. Plaintiff received bonus pay at a lower rate than other auditors.

28. Plaintiff received time-off awards at a lesser amount than other auditors.

WHEREFORE, Plaintiff respectfully prays that this Court:

(a) Awards Plaintiff the promotion to a GS-15, including back pay;

(b) Awards Plaintiff compensatory damages for not less than $350,000 for emotional distress, mental anguish, inconvenience, and impairment of quality of life;

(c) Awards reasonable attorney's fees and costs for this action and related administrative proceedings; and

(d) Awards other and further relief, including such declaratory and equitable relief as this Court deems just and proper.

## COUNT III
### Retaliation

29. Plaintiff herein adopts and incorporates by reference the allegations set forth in paragraphs 1 through 28 as if originally plead herein.

30. Plaintiff was deprived on two (2) prior occasions of the opportunity to be promoted based upon his racial classification. As a result, Plaintiff filed two (2) separate EEOC grievances challenging the Agency's discriminatory conduct.

31.     Plaintiff's supervisors knew or should have known about Plaintiff's prior EEOC grievances.

32.     Plaintiff's supervisors' knowledge of his prior EEOC grievances caused them to retaliate against him.

33.     Plaintiff's supervisors failed to provide credible, legitimate, and non-pretextual reasons for depriving Plaintiff a promotion to the GS-15 position.

WHEREFORE, Plaintiff respectfully prays that this Court:

(a)     Awards Plaintiff the promotion to a GS-15, including back pay;

(b)     Awards Plaintiff compensatory damages for not less than $350,000 for emotional distress, mental anguish, inconvenience, and impairment of quality of life;

(c)     Awards reasonable attorney's fees and costs for this action and related administrative proceedings; and

(d)     Awards other and further relief, including such declaratory and equitable relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury as to all issues.

Dated November 30, 2006

_____/s/_____
Donald M. Temple [408749]
TEMPLE LAW OFFICES
1229 15th Street, N.W.
Washington, D.C. 20005
(202) 628-1101

**COUNSEL FOR PLAINTIFF**